Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DEPARTAMENTO DE LA VIVIENDA<br><br>Recurrido<br><br>Vs.<br><br>JULIO E. DELGADO ROSARIO<br><br>Recurrente | KLRA202500178 | *Revisión administrativa* procedente del Departamento de la Vivienda<br><br>Sobre:  Solicitud de compra por tasación solar 59, Comunidad La Torre, Municipio de Loíza<br><br>Caso Núm.: SGDPV:0522-2023 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 27 agosto de 2025.

El 18 de febrero de 2025 compareció ante nos por derecho propio el Sr. Julio Delgado Rosario ("Delgado Rosario o recurrente"), para que revisemos la *Resolución* emitida el 11 de diciembre de 2024, notificada el 12 de diciembre de 2024, por el Secretario del Departamento de la Vivienda, el Lcdo. William Rodríguez Rodríguez ("Secretario").[1] En la cual, se confirmó la denegatoria de la venta por tasación de la Parcela 59 ubicada en la Comunidad La Torre del Municipio de Loíza ("Parcela 59"). Además, se ordenó la devolución de la suma de diecisiete mil dólares ($17,000.00) que pagó el señor Delgado Rosario al Departamento de la Vivienda ("Depto. de la Vivienda").

Por los fundamentos que expondremos a continuación, se **confirma** la *Resolución* recurrida. Veamos los fundamentos.

---

[1] Mediante *Resolución* emitida el 21 de marzo de 2025, ordenamos a la Secretaría del Tribunal de Apelaciones el cambio de materia, de un recurso de *Apelación* a uno de *Revisión Judicial* y la asignación del número alfanumérico correspondiente.

**-I-**

Se desprende del expediente que tras de varios trámites,[2] el **14 de noviembre de 2014** el señor Delgado Rosario solicitó al Depto. de la Vivienda el documento intitulado *"Investigación y Evaluación Solicitantes Título de Propiedad Ley 132 del 1ro de junio de 1975, según enmendada por la Ley 353 del 22 de diciembre de 1999".*[3] Ello, con el fin de adquirir el título de propiedad como dueño de la Parcela 59 que está ubicada en la Comunidad La Torre del Municipio de Loíza.

El **25 de febrero de 2015**, el señor Delgado Rosario firmó la *"Solicitud Compra por Tasación"* para la adquisición de la Parcela 59.[4]

El **5 de julio de 2016**, el Ing. Javier E. Ramos Hernández —*Secretario Auxiliar de la Secretaría de Gerencia y Desarrollo de Proyectos*—, le indicó al señor Delgado Rosario que la tasación de la Parcela 59 fue por la suma de diecisiete mil dólares ($17,000.00).[5] Por lo que, el recurrente efectuó un pago de tres mil dólares ($3,000.00) el **9 de agosto de 2016**, y el Depto. de Vivienda le concedió un plan de pago a un término de seis (6) años, sin que devengara intereses.[6]

Durante el periodo del **30 de septiembre de 2016** al **12 de julio de 2021**, el señor Delgado Rosario efectuó pagos mensuales correspondientes por la suma de $194.45.[7] El **17 de agosto de 2021**, el recurrente realizó un último pago por la cantidad de

---

[2] Entre los años **2013** y **2014** el Depto. de la Vivienda realizó varios trámites administrativos con el propósito de reposeer la Parcela 59. Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 75-86.

[3] Surge del expediente que, el recurrente completo la primera solicitud el **4 de octubre de 2013**. Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 1 y 33.

[4] Al amparo de la Ley Núm. 35 de 14 de junio de 1969, según enmendada, conocida como la *Ley para Ventas a Usufructuarios u Ocupantes*, 28 LPRA sec. 681. Según el recurrente completo la solicitud también el **17 de agosto de 2021**. Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 2-3 y 58.

[5] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 61.

[6] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 62 – 63.

[7] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 70 – 72.

$6,023.95, saldando el balance para la compra por tasación de la Parcela 59.[8]

**En igual fecha**, el señor Delgado Rosario presentó nuevamente la *"Solicitud de Compra por Tasación"*.[9] El **20 de agosto de 2021**, la Sra. Inés Lebrón Torres —*Recaudadora Auxiliar de la Secretaría de Administración de División de Recaudaciones*— emitió una certificación de saldo.[10] Sin embargo, al constatar que el recurrente aún no había construido en la Parcela 59, el caso fue remitido a la Oficina Central de la Agencia para la evaluación correspondiente.[11]

Luego de evaluar la solicitud, el **22 de mayo de 2022** la Sra. Niurka E. Rivera Rivera —*Secretaria Auxiliar de la Secretaría de Gerencia y Desarrollo de Proyectos de Vivienda*— le notificó al señor Delgado Rosario que no era elegible para comprar la Parcela 59, por lo que su caso sería archivado.[12] Así, tras varios trámites procesales, el **15 de diciembre de 2023** el Depto. de la Vivienda emitió una *"Segunda Notificación Enmendada: Archivo de Solicitud de Compra por Tasación"*.[13] En dicha notificación, confirmó el archivo de la solicitud y ordenó la devolución del dinero pagado por el recurrente.

Ante la inconformidad del señor Delgado Rosario se celebró un proceso adjudicativo. Las vistas fueron dirigidas por la Oficial Examinadora, la Lcda. Elizabeth Aquino Pérez ("OE Aquino Pérez"), los días **7, 22 y 27 de agosto de 2024**; **19, 25 y 26 de septiembre de 2024**; **y 1 de octubre de 2024**.[14] Allí, comparecieron ambas partes acompañadas de representación legal. El Depto. de la Vivienda presentó los testimonios de la Sra. Omaira Betancourt

---

[8] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, pág. 72.
[9] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, pág. 3.
[10] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, pág. 65.
[11] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, pág. 93.
[12] Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, pág. 112.
[13] Véase, Anejo 4 de *Apelación*, pág. 1-4.
[14] Véase, Anejo 1 de *Apelación*, pág. 1.

Colón ("Betancourt Colón")[15] y la Sra. Niurka E. Rivera Rivera ("Rivera Rivera").[16] Por la parte del recurrente, se presentaron los testimonios de la señora Betancourt Colón, la señora Rivera Rivera, la Sra. Moraima Agosto Vargas y la Sra. Leyda Valcárcel Valcárcel. Además, se marcaron 35 exhibits, a saber:

*Exhibit 1 – A. 14 noviembre de 2014 - Investigación y Evaluación Solicitantes Título de Propiedad Ley 132 del 1ro de junio de 1975, Según enmendada por la Ley 353 del 22 de diciembre de 1999".*

*B. 25 de febrero de 2015 – Solicitud Compra por Tasación al amparo de la Ley 35 del 14 de Junio de 1969.*

*C. 17 agosto de 2021 – Solicitud Compra por Tasación al amparo de la Ley 35 del 14 de junio de 1969.*

*D. Investigación y Evaluación Solicitantes Título de Propiedad Ley 132 del 1ro de junio de 1975, Según enmendada por la Ley 353 del 22 de diciembre de 1999" (sin fecha).*

*E. 20 de noviembre de 2014 – Solicitud e Investigación de Solares al amparo de la Ley de Tierras de Puerto Rico.*

*Exhibit 2 – Cadena de Correos electrónicos identificada como 2A a 2K.[17]*

*Exhibit 3 – Cuatro (4) fotografías de la Parcela 59.*

*Exhibit 4 – Segunda Notificación Enmendada Archivo de Solicitud de Compra por Tasación con fecha del 15 de diciembre de 2023.*

*Exhibit 5 – Certificación del Municipio de San Juan del 8 de octubre de 2013; Certificación Negativa del Centro de Recaudación sobre Ingresos ("CRIM") del 8 de octubre de 2013; Certificación Negativa de la Administración para el Sustento de Menores ("ASUME") del 7 de octubre de 2013; "Investigación y Evaluación Solicitantes Título de Propiedad Ley 132 del 1ro de junio de 1975, Según enmendada por la Ley 353 del 22 de diciembre de 1999, del 4 de octubre de 2013.*

*Exhibit 6 – Solicitud e Investigación de Solares al amparo de la Ley de Tierras de Puerto Rico con nota "Devuelto el 12/2/14".*

*Exhibit 7- Correos electrónicos entre el sr. Delgado Rosario y la Sra. Adriana Molina Cordero del 14 y 23 de marzo de 2022 y 12 de abril de 2022.*

*Exhibit 8 – Informe de Tasación de Mejoras del 10/16/2014.*

*Exhibit 9 – Carta del 9 de marzo de 2022 firmada por Moraima Agosto y Omaira Betancourt.*

*Exhibit 10- Informe Especial de Wanda Manso y Omaira Betancourt del 18 de abril de 2023.*

---

[15] La señora Betancourt Colón es la *Diretora de la Oficina Regional de Carolina.* Véase, Anejo 1 de *Apelación*, pág. 1.

[16] La señora Rivera Rivera es la *Secretaria Auxiliar de Gerencia y Desarrollo de Proyectos de Vivienda.* Véase, Anejo 1 de *Apelación*, pág. 1.

[17] *"Originalmente se sometieron porciones incompletas de correos electrónicos identificados como 2(k) y 2(l), pero ello fue subsanado por la parte promovida quien sometió la cadena de correos incluidas en como 2k la cual consta de 9 folios. La identificada como 2l sometida originalmente de manera incompleta fue eliminada". Cita en original.* Véase, Anejo 1 del *Escrito en Cumplimiento de Resolución*, págs. 6-23.

*Exhibit 11 – Certificación Negativa del CRIM y Declaración Jurada del Sr. Delgado Rosario del 11/14/2024.*

*Exhibit 12 – Recibo Oficial 257579 del pago de Mejoras del 14 noviembre de 2014.*

*Exhibit 13 – Solicitud Compra por Tasación al amparo de la Ley 35 del 14 de junio de 1969 del 25 de febrero de 2015.*

*Exhibit 14 – Certificación de Empleo del Municipio de San Juan del 22 de enero de 2015.*

*Exhibit 15 – Recibo Oficial 260125 del pago tasación de Parcela 59 del 23 de febrero de 2015.*

*Exhibit 16 – Carta del Ing. Julio E. Ramos Hernández del 5 de julio de 2016.*

*Exhibit 17 – Recibo Oficial 273524 del 9 de agosto de 2016 por el pago de $3,000.00 de plan de pago de compra por tasación de Parcela 59; Plan de Pago.*

*Exhibit 18 – Recibo Oficial 273548 del 13 de noviembre de 2016 por la suma de $194.45.*

*Exhibit 19 – Certificación de saldo de plan de pago del 20 de agosto de 2021.*

*Exhibit 20 – Carta del 31 de enero de 2023 del Sr. Delgado Rosario.*

*Exhibit 21 – Solicitud e Investigación de Solares del 20 de noviembre de 2014 al amparo de la Ley de Tierras de Puerto Rico con nota "Sometido nuevamente 12/4/14"; Solicitud e Investigación de Solares del 20 de noviembre de 2014 al amparo de la Ley de Tierras de Puerto Rico con nota "Sometido nuevamente 1/23/15";*

*Exhibit 22 – Recibo Oficial 254073 del pago de Tasación de Mejoras del 1ro de julio de 2014.*

*Exhibit 23 - Estado de Cuenta de Plan de Pago Parcela 59.*

*Exhibit 24 – Carta del 9 de marzo de 2022 firmada por Moraima Agosto Vargas.*

*Exhibit 25 – Carta del 25 de septiembre de 2013 de la Sra. Carattini Diana.*

*Exhibit 26 – Carta del 12 de noviembre de 2013 de la Sra. Carattini Diana.*

*Exhibit 27 – Lista de Parcelas y Solares Reposeídos del 13 de junio de 2014.*

*Exhibit 28 – Documento de Devolución de Solicitud del 28 de enero de 2015.*

*Exhibit 29 – Correo electrónico del Sr. Delgado Rosario a la Sra. Niurka Rivera del 14 de marzo de 2022.*

*Exhibit 30 - Carta del Lcdo. Michael Corona del 19 de abril de 2024.*

*Exhibit 31 - Correo electrónico del Lcdo. Michael Corona del 27 de abril de 2022.*

*Exhibit 32- Correo electrónico de la Sra. Moraima Agosto Vargas del 7 de febrero de 2022.*

*Exhibit 33- Informe de Tasación de la Parcela 59 del 06/23/2023.*

*Exhibit 34 - Correo electrónico de la Sra. Moraima Agosto Vargas del 26 de agosto de 2021.*

*Exhibit 35 - Notificación del 22 de mayo de 2023 sobre Archivo de Compra por Tasación de la Parcela 59.*

Tras evaluar el informe de la OE Aquino Pérez, el Secretario emitió una *Resolución* el **11 de diciembre de 2024**, notificada el **12 de diciembre de 2024**.[18] En esta, realizó las siguientes determinaciones de hechos:

1. *Según se desprende del expediente administrativo, la Parcela 59 ubicada en la comunidad La Torre del Municipio de Loíza, fue adjudicada en usufructo gratuito al Sr. Eugenio Collazo Hernández, al amparo de la Ley de Tierras de Puerto Rico, Ley 26 de 12 de abril de 1941, según enmendada.*
2. *La Parcela 59 se encontraba en estado de abandono, La misma fue visitada por el por el técnico evaluador, Ernesto Reyes, el 16 de agosto de 2013. La estructura enclavada en la Parcela 59 fue cedida por el Sr. Collazo Hernández a su hermano el Sr. Raúl Collazo Hernández.*
3. *El 25 de septiembre de 2013, la Sra. Carmen D. Carattini Diana, Directora de la Oficina Regional de Carolina del Departamento de la Vivienda en ese entonces, citó al Sr. Eugenio Collazo Hernández a comparecer el 4 de octubre de 2013 a las 8:00am para tratar asuntos relacionados a la Parcela que le fuera adjudicada en usufructo. No existe evidencia en el expediente administrativo ni en la prueba desfilada que confirme que el Sr. Collazo Hernández haya comparecido a dicha citación.*
4. *El Sr. Raúl Collazo Hernández, hermano del usufructuario, "visitó la oficina para reunirse con la Sra. Carmen D. Carattini porque el deseaba construir en el solar, pero no se le dio la oportunidad, porque residía en Canóvanas y su esposa tenía propiedades; aunque estaban casados por capitulaciones matrimoniales."*
5. *El 4 de octubre de 2013, antes de que la Parcela 59 fuera reposeída al Sr. Eugenio Collazo y su usufructo fuera cancelado, el Sr. Delgado Rosario suscribió en la Oficina Regional de Carolina un documento titulado "Investigación y Evaluación Solicitantes Título de Propiedad Ley 132 del 1ro de junio de 1975, Según enmendada por la Ley 353 del 22 de diciembre de 1999". El Sr. Delgado Rosario sometió: a) Certificación del Municipio de San Juan del 8 de octubre de 2013 en la que se confirmaba era Guardia Municipal con un salario mensual de $2,000.00, Bono de Verano 2013 por $800.00 y Bono Navidad 2012 por $1,800.00; b) Certificación Negativa del Centro de Recaudación sobre Ingresos ("CRIM") del 8 de octubre de 2013; c) Certificación Negativa de la Administración para el Sustento de Menores ("ASUME") del 7 de octubre de 2013; d) Certificación de Radicación de Planillas del Departamento de Hacienda del 7 de octubre de 2013.*
6. *El 12 de noviembre de 2013, la Sra. Carattini Diana envió carta al Sr. Melvin J. Quiñones Medina, Secretario Auxiliar de la Secretaría de Gerencia y Desarrollo de Proyectos del Departamento de la Vivienda y a la Sra. Ana Gloria Navedo, Directora Interina de la División de Desarrollo Comunitario, en la que les refirió el Solar 59 para posible reposesión por medio de edictos. En cuanto a las mejoras enclavadas en dicha parcela informó que existía una estructura en madera deteriorada la cual los vecinos desconocían a quien pertenecía.*
7. *A tenor con lo dispuesto en Ley 26, los días 29 de abril de 2014 y el 8 de mayo de 2014, se notificó al usufructuario, Sr. Eugenio Collazo Hernández, la intención del*

---

[18] Véase, Anejo 1 de *Apelación*, Anejo 1, pág. 1 – 25.

*Departamento de reposeer dicha parcela por abandono de la misma por un periodo de un (1) año o más. Ello, mediante la publicación de edictos. El Sr. Collazo Hernández, fue advertido en ambos edictos de su derecho a solicitar vista administrativa. Se le advirtió, además, que de no solicitar la vista en cuestión o no comparecer a la misma se procedería a resolver el contrato de usufructo. A pesar de ello, el Sr. Collazo Hernández, no solicitó la misma vista administrativa, por lo que a tenor con lo dispuesto en el Artículo 76-C de la Ley 26, el Departamento reposeyó la Parcela 59 y la misma fue declarada vacante.*

8. *El 1ro de julio de 2014, el Sr. Delgado Rosario emitió el pago de la suma de $250.00 por concepto de tasación de las mejoras enclavadas en la Parcela 59. Los servicios de tasación para la venta de las mejoras en cuestión fueron solicitados por el Departamento el 8 de octubre de 2014. Según el informe de tasación del 16 de octubre de 2014, las mejoras fueron tasadas en la suma de $262.00.*

9. *El 14 de noviembre de 2014, el Sr. Delgado Rosario emitió el pago en efectivo de los $262.00 por concepto de la compra de las mejoras enclavadas en la Parcela 59.*

10. *El 14 de noviembre de 2014, el Sr. Delgado Rosario suscribió en la Oficina Regional de Carolina un documento titulado "Investigación y Evaluación Solicitantes Título de Propiedad Ley 132 deliro de junio de 1975, Según enmendada por la Ley 353 del 22 de diciembre de 1999". El Sr. Delgado Rosario sometió Certificación Negativa del CRIM; Declaración Jurada suscrita en esa misma fecha en la que declaró no poseer propiedades inmuebles; Certificación de Deuda y Certificación de Radicación del Planillas del Departamento de Hacienda; Certificación Negativa de ASUME y Certificación Negativa del CRIM; todas ellas con fecha del 14 de noviembre de 2014.*

11. *El 20 de noviembre de 2014, el Sr. Delgado Rosario suscribió en la Oficina Regional de Carolina un documento de Solicitud e Investigación de Solares para la adjudicación del usufructo de la Parcela 59 como agregado. Ello, al amparo de la Ley de Tierras, supra. Dicho documento fue sometido nuevamente en varias ocasiones (12/4/2014 y el 1/23/2015).*

12. *La Solicitud e Investigación de Solares del Sr. Delgado Rosario fue devuelta por la Secretaría de Gerencia y Desarrollo de Proyectos de Vivienda a nivel central varias ocasiones mediante documentos de devolución de solicitud de parcelas debido a que: a) 24 de noviembre de 2014 – "Falta carta de empleador. El expediente no cuenta con información relacionada a sus ingresos. Favor verificar las fechas. Este expediente llegó a esta oficina el 21 de noviembre de 2014, ver ponche, y la fecha de la firma del verificador es 22 de noviembre de 2014 que es sábado. Además, las fechas están alteradas. La solicitud de adjudicaciones no debe tener borrones ni alteraciones."; b) 12 de diciembre de 2014 – "Los señalamientos mencionados no fueron corregidos en la devolución anterior. Falta carta de empleador. El expediente no cuenta con información relacionada a sus ingresos. Favor verificar las fechas. Este expediente llegó a esta oficina el 21 de noviembre de 2014, ver ponche, y la fecha de la firma del verificador es 22 de noviembre de 2014 que es sábado. La solicitud de adjudicaciones no debe tener borrones ni alteraciones."; c) 28 de enero de 2015 – "Los señalamientos mencionados no fueron corregidos en la devolución anterior. Favor verificar las fechas. Este expediente llegó a esta oficina el 21 de noviembre de 2014, con las demás fechas, posteriores a esta última. La*

solicitud de adjudicaciones no debe tener borrones ni alteraciones."

13. El Sr. Delgado Rosario sometió Certificación del Municipio de San Juan con fecha del 22 de enero de 2015 en la que se confirmaba era Guardia Municipal con un salario mensual de $2,000.00, Bono de Verano 2014 por $800.00 y Bono Navidad 2014 por $1,800.00.

14. El Sr. Delgado Rosario fue informado vía telefónica por la Sra. Wanda Manso y por la Sra. Carattini que no cualificaba para Ja adjudicación de la Parcela 59 como usufructuario por sus ingresos.

15. El Sr. Delgado Rosario nunca ha poseído ni posee el usufructo de la Parcela 59. Tampoco tiene constituida en dicha parcela su vivienda principal. Desde hace treinta y cinco (35) reside en la Parcela 169 de la Comunidad la Torre con su señora madre, Gloria Rosario López, a quien le pertenece dicha parcela.

16. El 23 de febrero de 2015, el Sr. Delgado Rosario emitió pago por la suma de $250.00 por concepto de tasación de la Parcela 59.

17. El 25 de febrero de 2015, el Sr. Delgado Rosario suscribió en la Oficina Regional de Carolina un documento titulado Solicitud Compra por Tasación al amparo de la Ley 35 del 14 de junio de 1969 para la compra de la Parcela 59. El mismo fue sometido en esa misma fecha.

18. La Sra. Moraima Agosto Vargas, en sus funciones como técnica investigadora recomendó favorablemente la compra por tasación de la Parcela 59. Esta declaró desconocer las razones por las cuales se llenaron tantas solicitudes al Sr. Delgado Rosario bajo leyes diferentes.

19. El 12 de junio de 2015, la Sra. Carattini Diana emitió Certificación en la que conformé que desde del 25 de febrero de 2015, existía una solicitud de compra por tasación sobre la Parcela 59 a nombre del Sr. Julio Delgado Rosario.

20. El 15 de junio de 2015, la Sra. Carattirti Diana y la Sra. Wanda Manso Cepeda emitieron endoso de agua y luz a favor del Sr. Julio Delgado Rosario, en el que certificaron no tener objeción a que se le otorgara permiso para dichos servicios en la Parcela 59. El Sr. Delgado Rosario no hizo gestiones para conectar los servicios de agua y luz.

21. Los servicios de tasación para la Parcela 59, fueron solicitados por el Departamento el 4 de marzo de 2016. Según el informe de tasación del 28 de marzo de 2018, la misma fue tasada en la suma de $17,000.00.

22. El 5 de julio de 2016, el Ing. Javier E. Ramos Hernández, Secretario Auxiliar de la Secretaría de Gerencia y Desarrollo de Proyectos de Vivienda, envió carta al Sr. Delgado Rosario en la que le informó que el precio de venta de la Parcela 59, ascendía a la suma de $17,000.00 más $100.00 por concepto de gastos administrativos. Se le indicó que para efectuar el pago correspondiente al solar debía pasar por la Oficina Regional de Carolina con la Sra. Carattini Diana dentro de los próximos quince (15) días laborables.

23. El 9 de agosto de 2016, la Sra. Carattini Diana concedió un plan de pago al Sr. Delgado Rosario para el pago del precio de venta de la Parcela 59. El mismo fue otorgado por un término de seis (6) años sin que devengara intereses. En esa misma fecha, el Sr. Delgado Rosario efectuó un depósito por Ja suma de $3,000.00 mediante cheque y se emitió un recibo a esos efectos.

24. A partir del 30 de septiembre de 2016, el Sr. Delgado Rosario emitió pagos mensuales por la suma de $194.45. Mientras estuvo efectuando el plan de pago ningún funcionario del Departamento se presentó a la parcela.

25. En el año 2016, el Sr. Delgado Rosario colocó un "trailer" en la Parcela 59 el cual utilizó durante varios meses. A parte de esa ocasión, no ha pernoctado en la Parcela 59 en ningún otro momento. Tampoco residió en la estructura que había allí enclavada antes del Huracán Irma pues determinó no vivirla.

26. En el año 2017, el Sr. Delgado Rosario y la Sra. Elena Marie Zapata contrajeron matrimonio. Estos otorgaron Capitulaciones Matrimoniales ante la Notario Público Maraliz Rivera Gutiérrez el 28 de julio del 2017. El Sr. Delgado Rosario y la Sra. Zapata tienen tres (3) hijos en común que al momento de la celebración de la vista adjudicativa tenían 7, 5 y 3 años. Todos ellos, viven en la Parcela 169 junto a la señora madre del Sr. Delgado Rosario.

27. La Sra. Zapata posee una propiedad en el Municipio de Cabo Rojo la cual adquirió en el año 2011. El uso de esa propiedad por la familia es uno vacacional ("vacation home"). No tienen intención de trasladar su residencia principal a esa propiedad. La Sra. Zapata trabaja como agente especial para el Federal Bureau of Investigation ("FBI") desde hace tres (3) años.

28. El Sr. Delgado Rosario envió a realizar un estudio de suelo de la Parcela 59. El mismo fue preparado por MGV Geotheenical Group, PSC y sometido el 20 de octubre de 2020. En el inciso 3.2 del mismo se señaló lo siguiente: "The owner does not currently have a contemplated Project for the site." No existe un plano certificado para la construcción de una estructura en la Parcela 59 que haya sido preparado por un profesional licenciado en Puerto Rico. La única información producida por el Sr. Delgado Rosario es una presentación preparada por éste para su señora esposa en la cual aparecen imágenes "cropeadas" por el Sr. Delgado del internet, algunas de la página electrónica de la compañía "Casas Mi Anhelo» sobre sus modelos de vivienda. El Sr. Delgado Rosario no pudo proveer evidencia de las gestiones realizadas con los bancos para adquirir financiamiento para la construcción de su vivienda en la Parcela 59.

29. El 17 de agosto de 2021, emitió un pago final por la suma de $6,023.95 para saldar el balance del plan de pago para la compra por tasación de la Parcela 59.

30. Durante todo el proceso de solicitud de compra por tasación de la Parcela 59, el Sr. Delgado Rosario siguió las instrucciones que le fueron impartidas y proveyó la documentación e información requerida por los representantes de la Oficina Regional de Carolina de ese entonces, en particular por las señoras, Moraima Agosto Vargas, Wanda Manso y la directora regional, Carmen Carattini Diana.

31. El 17 de agosto de 2021, el Sr. Delgado Rosario suscribió en la Oficina Regional de Carolina un documento titulado Solicitud Compra por Tasación al amparo de la Ley 35 del 14 de junio de 1969 a instancias de la Sra. Moraima Agosto Vargas. Sometió luego, además, de manera física en la Oficina Regional la documentación actualizada que le fue requerida por ésta, incluyendo una Declaración Jurada del 15 de septiembre de 2021, las Capitulaciones Matrimoniales y cartas de vecinos del 14 de septiembre de 2021.

32. El 26 de agosto de 2021, la Sra. Moraima Agosto Vargas envió un correo electrónico a la Sra. Iris M. Lebrón Torres en el que solicitó se emitiera carta de saldo para tramitar el título de propiedad de la Parcela 59. La Secretaría de Administración de Recaudaciones del Departamento de la Vivienda, emitió Certificación con fecha del 20 de agosto

de 2021, en la que confirmo que el Sr. Delgado Rosario no poseía deudas con la agencia, pues la deuda de Venta de Solar fue cancelada en su totalidad. La Certificación fue preparada por la Sra. Lebrón Torres, y firmada por ésta y la Sra. Yolanda Guzmán Colón, Directora de Presupuesto y Recaudaciones.

33. El Sr. Delgado Rosario comenzó a laborar para la Guardia Costanera como reservista para el mes de junio del año 2019. Su ingreso anual es de aproximadamente $5,000.00. Para el año 2020 sus ingresos eran los recibidos de la policía municipal más lo correspondiente a la Guardia Costanera. También es dueño de la compañía Oasis Enterprise, LLC, la cual se incorporó el 15 de octubre de 2021. La trabaja junto al hermano de su señora esposa. El propósito de esa compañía es proveer servicios de integración al turista con la naturaleza "kayaking", senderismo, avistamiento de aves, etc. El Sr. Delgado Rosario al presente no devenga ingresos de esa compañía. En la Parcela 59 no hay equipos de la compañía y no tiene la intención de utilizar la parcela para ello.

34. El Sr. Delgado Rosario culminó sus funciones como policía del Municipio de San Juan en el año 2021. Desde el año 2022 y hasta la actualidad los ingresos del Sr. Delgado Rosario son $0. Todas las necesidades económicas de él, sus tres (3) hijos y su esposa son cubiertas con los ingresos de ésta última, la Sra. Maria Elena Zapata.

35. El 7 de febrero de 2022, la Sra. Moraima Agosto Vargas envió un correo electrónico a la Sra. Leyda O. Valcárcel Valcárcel con relación a la venta de la Parcela 59. En el mismo indicó que el Sr. Delgado Rosario había saldado la cuenta. Indicó, además, que no tenía nada construido. A solicitud de la Sra. Valcárcel, el 9 de marzo de 2022, la Sra. Agosto Vargas preparó una carta dirigida a ésta y a la Sra. Niurka E. Rivera Rivera sobre lo ocurrido en la Parcela 59 y el estatus actual del caso. Dicha carta fue firmada por la Sra. Moraima Agosto y por la Sr. Omayra Betancourt. La Sra. Valcárcel no intervino ni tuvo rol en la evaluación del caso. No le pareció productivo hacerlo porque no tenía memorando actualizado del caso. Ésta tampoco tuvo la oportunidad de recibir el memorando de la Sra. Agosto Vargas debido a que se encontraba atravesando una situación crítica de salud.

36. La Sra. Omayra Betancourt remitió el caso del Sr. Delgado Rosario a nivel central para evaluación de la Sra. Niurka E. Rivera Rivera porque vio que algo no estaba bien. En su análisis del caso la Sra. Rivera determinó que al Sr. Delgado Rosario no le aplicaba ninguna de las leyes que pudo tener ante sí.

37. El 14 de marzo de 2022, el Sr. Delgado Rosario acudió a la Oficina Regional de Carolina para verificar el estatus del título de propiedad de la Parcela 59. Como sintió que no fue tratado y/o atendido adecuadamente por la Directora Regional, Sra. Omayra Betancourt, acudió en esa misma fecha a las Oficinas Centrales del Departamento de la Vivienda en donde se reunió con la Sra. Niurka E. Rivera Rivera.

38. Durante la reunión con el Sr. Delgado, la Sra. Niurka E. Rivera Rivera le indicó las razones por las cuales no era elegible y le explicó como debió haberse trabajado su caso. La Sra. Rivera solicitó al promovido documentación actualizada debido a que la provista había expirado. La misma fue provista por el Sr. Delgado Rosario ese mismo día.

39. Luego de dicha reunión el Sr. Delgado Rosario envió varios correos electrónicos tanto a la Sra. Niurka Rivera como a la Sra. Adrianna Molina dando seguimiento respecto al título

*de propiedad de la Parcela 59. Dichos correos electrónicos no fueron contestados.*

40. *El Sr. Delgado Rosario radicó una querella ante la Oficina del Procurador del Ciudadano ("Ombudsman") para solicitar asistencia con la entrega del título de propiedad de la Parcela 59. Dicha oficina remitió varias comunicaciones al Departamento.*

41. *El Sr. Delgado Rosario también contrató los servicios del Lcdo. Michael Corona, quien el 19 de abril de 2022 remitió una carta al Departamento informando su intención de radicar una demanda de no producir en un término de diez (10) días el título de propiedad de la Parcela 59 y/o una explicación para la demore prolongada en la expedición del mismo.*

42. *El 23 de mayo de 2022, el Departamento informó al Ombudsman que en esos momentos estaban "impedidos de atender la Querella del Sr. Delgado ya que existe una controversia legal activa, presentada en contra de nuestra agencia, relacionada con la petición de título de propiedad." Se les informó, además, que "tan reciente como el día 19 de abril de 2022 recibimos comunicación escrita por parte del Lcdo. Michael Corona, Representante legal del ciudadano*

43. *El 27 de abril de 2022, el Lcdo. Corona y el Lcdo. Jezer Mulero Pantoja, en representación del Departamento, sostuvieron una comunicación telefónica en relación a la carta enviada por el primero. En esa misma fecha, el Lcdo. Corona remitió un correo electrónico al Lcdo. Mulero al respecto.*

44. *El 31 de enero de 2023, el Sr. Delgado Rosario envió carta al Secretario de la Vivienda en la que solicitó su intervención para la adquisición del título de propiedad de la Parcela 59. Indicó que de no recibir comunicación dentro de un término de siete (7) días presentaría un mandamus al tribunal. No obtuvo respuesta.*

45. *El 21 de marzo de 2023, Sr. Delgado Rosario radicó Demanda de Mandamus en contra del Departamento ante el Tribunal de Primera Instancia en el Caso Civil Núm. LO2023CV00034 para requerir la expedición del título de propiedad de la Parcela 59.*

46. *El 18 de abril de 2023, la Sra. Wanda Manso por instrucciones de la Sra. Betancourt preparó un informe especial de la Parcela 59.*

47. *El 22 de mayo de 2023, la Secretaría de Gerencia y Desarrollo de Proyectos de Vivienda a través de su Secretaria Auxiliar, la Sra. Niurka E. Rivera Rivera, notificó al Sr. Delgado Rosario de su intención de archivar su solicitud de compra por tasación, debido a que a tenor con las leyes, normas y reglamentos que administra la agencia no era elegible para la compra del mismo. En dicha misiva no se hizo referencia específica a las leyes aplicables. Como respuesta a esa notificación el 20 de junio de 2023, el Sr. Delgado Rosario solicitó vista administrativa, la cual fue concedida mediante Notificación del 30 de junio de 2023. A solicitud de la parte promovente, los procedimientos administrativos fueron paralizados hasta que los procedimientos en el pleito de Mandamus en el caso LO2023CV00034 finalizaran.*

48. *En junio de 2023, la Sra. Niurka E. Rivera Rivera autorizó al Sr. Orlando González Cruz para que se enviara realizar una nueva tasación de la Parcela 59 porque ya estaba vencida. La participación del Sr. González Cruz surge en la solicitud de servicios de tasación porque éste tiene los tasadores a su cargo.*

49. *El procedimiento administrativo fue reactivado a solicitud del Sr. Delgado Rosario luego de solicitar el desistimiento*

*de su petición de Mandamus. El 14 de diciembre de 2023, se llevó a cabo una vista argumentativa. Como resultado de lo esbozado por las partes, el Foro adjudicativo ordenó a la parte promovente cursara la parte promovida una Notificación Enmendada de Archivo de Solicitud de Compra por Tasación.*

50. *La parte promovente cursó al Sr. Delgado Rosario una Segunda Notificación Enmendada con fecha del 15 de diciembre de 2023 en la que notificó su intención de archivar su solicitud de compra por tasación de la Parcele 59, al amparo de las disposiciones de la Ley Núm. 132 del 1ro de julio de 1975, Ley 35 del 14 de junio de 1969, y la Ley 26 del 12 de abril de 1941, según enmendadas, del Reglamento Para Conceder Títulos de Propiedad a los habitantes de Viviendas Enclavadas en Terrenos Anejos, Reglamento Núm. 3939 del 12 de julio de 1993 y del Reglamento para Regular los Procedimientos de Adjudicación Formal en el Departamento de la Vivienda y sus Agencias Adscritas, Reglamento Núm. 4953 del 19 de agosto de 1993. Ello, como consecuencia de la alegada falta de cumplimiento del Sr. Julio E. Delgado Rosario con los requisitos para cualificar para la compra del Solar 59 de la Comunidad La Torre en el Municipio de Loíza, allí enumerados.*

51. *Luego de extensos trámites procesales, un amplio cúmulo de mociones presentadas por las partes y recursos presentados ante el foro judicial por la parte promovida, la vista adjudicative en el caso del epígrafe tuvo a la postre su inicio el día 7 de agosto de 2024. El desfile de prueba culminó el 1ro de octubre de 2024.*

52. *Según lo manifestado durante la vista adjudicativa, el interés del Sr. Delgado Rosario es obtener el título de propiedad de la Parcela 59 para construir una propiedad en la que puedan vivir él, su esposa, la Sra. Elena Zapata y sus tres (3) hijos.* [sic].[19]

En consecuencia, el Secretario resolvió que no procedía la venta ni la concesión de título de la Parcela 59 al señor Delgado Rosario. Determinó que el señor Delgado Rosario no cumplió con los requerimientos de la Ley Núm. 26-1941 ni la Ley Núm. 35-196 por no encontrarse en posesión del terreno ni tener enclavada su única vivienda al momento de solicitar el título de usufructo. Señaló que el recurrente tampoco cumple con los requisitos de la Ley Núm. 132-1975 ni la Ley Núm. 286-1999, ya que no estaba ocupando la Parcela 59 ni había construido su vivienda permanente principal en la misma. Tampoco, cualificaba como un agregado elegible para comprar bajo las disposiciones de la Ley Núm. 26-1941, ya que de la prueba desfilada no surge esa cualificación.

---

[19] Véase, Anejo 1 de *Apelación*, pág. 5-14.

A tono con lo antes dicho, el Secretario confirmó la denegatoria de la venta por tasación de la Parcela 59 a favor del señor Delgado Rosario. Además, ordenó la devolución de la suma de $17,000.00 pagada por el recurrente.

Insatisfecho, el **2 de enero de 2025** el señor Delgado Rosario presentó una *"Petición de Expedición de Resolución y/o Orden Final Enmendada; al igual que otros remedios o, en su alternativa, Solicitud de Reconsideración"*. En síntesis, alegó que la duplicidad de la página número once (11) de la *Resolución* le privó de una página de determinaciones de hechos, por lo que el Foro debía emitir una Resolución enmendada.[20] Arguyó que la *"Segunda Notificación"* fue emitida erróneamente, dado que no menciona cuál de las solicitudes fue la evaluada por la agencia. Añadió que no hubo un descubrimiento de prueba por parte de la OE Aquino Pérez. Por último, sostuvo que tenía derecho al título de propiedad de la Parcela 59, ya que en los años anteriores —**2013**, **2015**— había cualificado para la venta por tasación de la Parcela.

Al ser rechazada de plano la solicitud antes dicha, el **18 de febrero de 2025** el señor Delgado Rosario acudió antes nos por derecho propio y señaló la comisión de los siguientes cinco (5) errores:

> **PRIMER ERROR**: *ERRÓ LA OFICIAL EXAMINADORA AL NO ATENDER LA SOLICITUD DE REGRABACIONES SEGÚN SOLICITADA POR EL APELANTE.*
>
> **SEGUNDO ERROR**: *ERRÓ LA OFICIAL EXAMINADORA LA NOTIFICACION DEFECTUOSA DE UNA RESOLUCIÓN AL NO PRODUCIR EL CONTENIDO DE LA MISMA EN SU TOTALIDAD.*
>
> **TERCER ERROR**: *LA DECISIÓN NO ESTA BASADA EN EL EXPEDIENTE.*
>
> **CUARTO ERROR**: *ERRÓ LA OFICIAL EXAMINADORA AL CONCLUIR QUE SE DENIEGA LA VENTA POR TASACIÓN DE LA PARCELA 59 YA QUE LAS NOTIFICACIÓN SOBRE LA CANCELACIÓN FUE DEFECTUOSA.*

---

[20] De la *Resolución* surge que la información en la página 11 de las Determinaciones de Hecho es repetida en otra página, pero la información continúa desarrollándose en las páginas siguientes y no hay ausencia de información. Véase, Anejo 1 de *Apelación*, pág. 11.

***QUINTO ERROR****: ERRÓ LA OFICIAL EXAMINADORA AL NO PERMITIRLE AL APELANTE UTILIZAR EL MECANISMO DEL DESCUBRIMIENTO DE PRUEBA.*

Tras varios trámites procesales, el **9 de abril de 2025** compareció el Depto. de la Vivienda representado por la Oficina del Procurador General de Puerto Rico en *"Escrito en Cumplimiento de Resolución".*

Por lo cual, dimos por perfeccionado el recurso para la consideración del Panel Especial.

**-II-**

**-A-**

Conforme al Artículo 4.006 (c) de la Ley Núm. 201-2003, según enmendada, *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico,* el Tribunal de Apelaciones tiene competencia apelativa para revisar las decisiones, órdenes y resoluciones finales emitidas por las agencias administrativas.[21] A tales efectos, es norma reiterada que las determinaciones administrativas gozan de una presunción de corrección y regularidad.[22] A tenor con lo anterior, las determinaciones de hecho contenidas en las decisiones de las agencias serán sostenidas por el tribunal, siempre que estén fundamentadas en evidencia sustancial que conste en el expediente administrativo.[23] Esto incluye las grabaciones o transcripciones de las vistas adjudicativas, lo que garantiza que dichas determinaciones sean revisadas conforme a los hechos y a la evidencia presentada durante el procedimiento.[24]

La *Revisión Judicial* de decisiones administrativas está regulada principalmente por la Ley Núm. 38-2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo*

---

[21] Ley Núm. 201-2003, según enmendada, conocida como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003,* 4 LPRA sec. 24y.
[22] *Gutiérrez Vázquez v. Hernández y Otros,* 172 DPR 232, 244 (2007); *Hernández v. Centro Unido,* 168 DPR 592, 615 (2006).
[23] Sec. 4.5 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* 3 LPRA sec. 9675.
[24] *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR __ (2025).

*Uniforme* (LPAU).[25] La Revisión Judicial no implica una nueva valoración de la evidencia ni sustituye la función de la agencia, sino que se limita a garantizar que las agencias actúen dentro de las facultades otorgadas por ley y conforme a derecho.[26] A esos efectos, la revisión judicial comprende tres (3) aspectos: **(i)** la concesión del remedio apropiado; **(ii)** la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y **(iii)** la revisión completa y absoluta de las conclusiones de derecho.[27]

Asimismo, los tribunales revisores deben conceder gran peso o deferencia a las aplicaciones e interpretaciones que hacen las agencias de las leyes y reglamentos que administran. No obstante, no están obligados a acoger sus conclusiones de derecho si estas no son conformes con el ordenamiento jurídico.[28] De hecho, el Tribunal Supremo de Puerto Rico ha reiterado que las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.[29]

En el ámbito federal, en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024), el Tribunal Supremo de los Estados Unidos sostuvo que el *Administrative Procedure Act* (APA) no establece una norma de deferencia que obligue a los tribunales a acoger las interpretaciones jurídicas de las agencias.[30] Relegar a las agencias la función de interpretar la ley, según señaló el foro federal, desafía el mandato del APA, el cual dispone que corresponde al tribunal revisor *"[d]ecidir todas las cuestiones de derecho pertinente"*.[31] Esta determinación, emitida por el ámbito federal, resulta aplicable en el ámbito local, en la medida en que la LPAU fue creado usando las disposiciones del APA como inspiración.

---

[25] Secs. 4.1 – 4.7 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA secs. 9671-9677.
[26] *Oficina de Ética Gubernamental v. Martínez Giraud,* 210 DPR 79, 88 (2022); *Hernández Feliciano v. Mun. De Quebradillas,* 211 DPR 99 (2023).
[27] *Otero Rivera v. Bella Retail Grp., Inc.,* 214 DPR 473 (2024).
[28] *Cruz v. Administración,* 164 DPR 341, 357 (2005).
[29] 3 LPRA sec. 9675.
[30] *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025).
[31] *Íd.*, citando a 5 USC sec. 706.

Ciertamente, la interpretación del derecho es una función inherente del Poder Judicial no de las agencias administrativas. Aunque estas pueden aportar su pericia técnica, los jueces no están obligados a acogerla si no se ajusta al marco legal.[32] Al momento de revisar una decisión administrativa, el criterio rector será la razonabilidad de la actuación de la agencia.[33] La revisión judicial debe limitarse a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que constituya un abuso de discreción.[34] En caso de que se demuestre que la actuación administrativa fue *ultra vires*, esta será considerada nula.[35]

Por último, la LPAU establece que el tribunal puede conceder el remedio apropiado si determina que el recurrente tiene derecho a ello. Ese proceso de revisión judicial busca equilibrar la deferencia hacia las agencias administrativas, debido a su especialización, con la necesidad de garantizar que sus decisiones sean legales y razonables.[36]

**-B-**

Referente al descubrimiento de prueba en el ámbito administrativo, las disposiciones de la Sección 3.8(a) de la LPAU, establece que las reglas ordinarias sobre prueba no aplican a los procedimientos de adjudicación administrativa.[37] No obstante, dispone que los reglamentos de las agencias deberán garantizar a todo querellado el derecho a mecanismos de descubrimiento de prueba en aquellos casos en los que el procedimiento adjudicativo haya sido iniciado por la propia agencia.

En concordancia con ello, el Articulo XVI del Reglamento Núm. 4953, de 12 de julio de 1993, *Reglamento para Regular los*

---

[32] *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025).
[33] *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[34] *Comisionado de Seguros PR v. Integrand,* 173 DPR 900, 914-915 (2008); *Murphy Bernabe v. Tribunal Superior,* 103 DPR 692, 699 (1975).
[35] *Rodríguez Ocasio v. ACAA,* 197 DPR 852 (2017).
[36] *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR __ (2025).
[37] 3 LPRA sec. 9648.

*Procedimientos de Adjudicación Formal en el Depto. de Vivienda y sus Agencias Adscritas*, regula los mecanismos aplicables al descubrimiento de prueba. Dicha disposición establece que, cuando la agencia sea la parte promovente, deberá garantizar al querellado acceso a: *"(1) todos los documentos relacionados con la querella que la agencia se proponga utilizar en el caso; (2) la lista de los testigos que comparecerán a la vista, con un breve sumario del contenido de su testimonio"*.[38]

**-C-**

Pertinente al caso ante nos, el Título V de la Ley Núm. 26 de 12 de abril de 1941, según enmendada, conocida como la *Ley de Tierras de Puerto Rico*,[39] tiene como propósito beneficiar a las familias de agregados mediante el fomento de su bienestar, la garantía de su libertad económica y la promoción de la justicia social. Dicho Titulo dispone que las fincas y/o parcelas adquiridas por el Depto. de la Vivienda, mediante traspaso de la Autoridad de Tierras, podrán ser cedidas en usufructo gratuito a dichas familias, permitiéndoles ocupar una porción del terreno para la construcción de una vivienda permanente.[40]

Ante tal facultad del Departamento de la Vivienda, se le ha impuesto la obligación de ejercer un riguroso control en la adjudicación de estos terrenos, a fin de asegurar que los adjudicatarios cumplan con los requisitos establecidos por ley.[41]

---

[38] Reglamento Núm. 4953 de 12 de julio de 1993, *Reglamento para Regular los Procedimientos de Adjudicación Formal en el Departamento de la Vivienda y sus Agencias Adscritas*, pág. 6-7.
[39] 28 LPRA sec. 241 *et seq.*
[40] 28 LPRA sec. 553.; Articulo 78 de la Ley Núm. 26-1941, 28 LPRA sec. 555. *("Por el término de 'agregado' se entenderá a los fines de las secs. 241 et seq. de este título, todo jefe de familia y aquellas personas solas que cualifiquen que residan en la zona rural, cuyo hogar se encuentre en casa y terreno ajenos o en casa propia levantada en terreno ajeno, que se una familia de escasos recursos económicos y que no posea terreno en calidad de dueño. Para propósitos de las secs. 241 et seq. de este título se utilizará el término 'familia de escasos recursos económicos', establecido por la secretaria de Vivienda mediante orden administrativa a los fines de determinar el ingreso bruto ajustado. No se podrá otorgar más de un predio a un jefe de familia y aquellas personas solas que cualifiquen ni estas podrán traspasarlos sin el consentimiento de la Administración de Desarrolló y Mejores de Vivienda, bajo el reglamento que la Administración de Desarrollo y Mejoras de Viviendas apruebe".).*
[41] 28 LPRA sec. 553.

Por su parte, el Artículo 76 de la Ley Núm. 26-1941 autoriza la cesión gratuita de parcelas, entre una (1) y tres (3) cuerdas, a familias de escasos recursos económicos, sujeta a ciertas restricciones.[42] Dichas cesiones se formalizan mediante un contrato de usufructo preparado por el Depto. de la Vivienda, el cual tiene fuerza de ley y contiene las penalidades que dicha agencia considere pertinentes en caso de incumplimiento.[43] Dicho articulado, dispone que una vez se haya otorgado el usufructo de una parcela a un agregado, este tiene la obligación de construir una vivienda o trasladar la suya a dicha parcela dentro de un plazo de ciento veinte (120) días, salvo que se le haya concedido una prórroga por escrito.[44] De no cumplir con dicho término, el contrato podrá ser cancelado sin necesidad de declaración judicial, y el agregado deberá desalojar la parcela, la cual quedará nuevamente bajo la libre disposición de la agencia.[45]

En complemento a lo anterior, el aludido artículo establece las restricciones y condiciones que rigen la cesión gratuita en usufructo. Establece que cuando la parcela cedida o las mejoras realizada permanezcan en estado de abandono por un período de un (1) año o más, ello constituirá causa suficiente para cancelar el contrato de usufructo. Como consecuencia, la parcela será reposeída y retornará a ser propiedad del Depto. de la Vivienda.[46] Añade que, cualquier cesión ilegal de una parcela en usufructo no confiere derechos legales de ningún tipo al supuesto adquiriente. Conforme a la cesión gratuita de terrenos por la Ley Núm. 26-1941, los mismos términos y condiciones se aplican a los empleados públicos que sean jefes de familia, no posean terrenos en calidad de dueño, residan en casa y terreno ajeno o en vivienda propia construida en terreno

---

[42] *Íd.*
[43] *Íd.*
[44] *Íd.*
[45] *Íd.*
[46] 28 LPRA sec. 553c.

ajeno, y carezcan del capital necesario, o cuyos ingresos, a juicio de la Administración, resulten insuficientes para adquirir un terreno.[47]

En tales circunstancias, cuando un empleado público ocupe una parcela donde esté ubicada su única vivienda, podrá solicitar a la Administración el título de usufructo, y esta podrá concederlo si determina que cumple con los requisitos legales y reglamentarios correspondientes.

**-D-**

Por otro lado, la Ley Núm. 35 de 14 de junio de 1969, según enmendada, conocida como la *Ley para Venta de Parcelas a Usufructuarios u Ocupantes*,[48] tiene como propósito fomentar que aquellas familias que *"[h]ayan disfrutado las parcelas en usufructo perpetuo adquieran título de estas y que aquellos que adquieran en el futuro en tal condición, puedan optar retenerlas en usufructo perpetuo o adquirir el pleno dominio de estas mediante título de propiedad"*.[49]

Esta legislación autoriza al Secretario de Depto. de la Vivienda a conceder el título de propiedad a los usufructuarios u ocupantes de parcelas ubicadas en las comunidades que hayan obtenido dichas parcelas al amparo de las disposiciones de la Ley Núm. 26-1941. A referida ley en el Artículo 9-A de la referida ley provee un mecanismo para que la transmisión del título de propiedad se realice mediante certificaciones, las cuales son inscribibles en el Registro de la Propiedad.[50]

En virtud de lo antes expuesto, el Secretario del Depto. de la Vivienda tiene la facultad de vender las parcelas cedidas en usufructo por la suma nominal de un dólar ($1), siempre que el usufructuario: *"(a) haya construido o traslado su residencia a dicha*

---

[47] 28 LPRA sec. 553.
[48] 28 LPRA sec. 681 *et. seq.*
[49] Exposición de Motivos de la Ley Núm. 35 del 14 de junio de 1969, según enmendada, 28 LPRA sec. 681 *et seq.*
[50] 28 LPRA sec. 689a.

*parcela; y (b) resida en la misma y la utilice como su residencial principal".*[51]

**-E-**

Referente a la Ley Núm. 132 de 1 de julio de 1975, según enmendada, conocida como la *Ley de Viviendas Enclavadas en Terrenos Ajenos*,[52] esta autoriza al Secretario del Depto. de la Vivienda a concederle el título de propiedad a los ocupantes que ya hayan constituido su vivienda sobre terrenos pertenecientes a la agencia.[53]

Según la aludida Ley, se considera "ocupante" a la familia que, antes del 31 de diciembre de 2002, tomó posesión de un lote, ya sea en terrenos privados o pertenecientes a una agencia pública, con o sin autorización, y que ha sido tolerada por el propietario para ocuparlo. También incluye a las familias que, después de esa fecha, adquirieron la vivienda o estructura construida en el lote mediante transferencia, herencia, donación, intercambio, cesión o compra.[54] También dispone que el precio de los lotes podrá fijarse entre un dólar ($1) y el valor total de la tasación básica, según corresponda a la evaluación del terreno.[55]

En ese contexto, la cesión en usufructo gratuito constituye uno de los mecanismos mediante los cuales las familias pueden adquirir o conservar el derecho de uso sobre los terrenos o viviendas, siempre que cumplan con los requisitos establecidos por ley, tales como los ingresos familiares y las condiciones previas de ocupación.[56]

De conformidad con lo anterior, la Ley Núm. 132-1975 establece que, para cualificar para le concesión del título de

---

[51] 28 LPRA secs. 682-683.
[52] 17 LPRA sec. 751 *et. seq.*
[53] 17 LPRA sec. 754.
[54] 17 LPRA sec. 751.
[55] *Íd.*
[56] *Íd.*

propiedad, los ocupantes deben cumplir con los siguientes cuatro (4) requisitos:

1) Ser ocupante del solar y residir en la vivienda enclavada en el mismo.
2) Tener constituido en dicha vivienda su domicilió permanente.
3) No poseer otra vivienda de ninguna índole.
4) Residir en la vivienda al momento de la aprobación de esta ley.[57]

**-F-**

Por último, la Ley Núm. 286 de 21 de agosto de 1999, conocida como la *Ley para Vivienda Enclavadas en Terrenos Ajenos y la Ley para disponer sobre el Traspaso de Solares o Parcelas, Gravados o Afectados y la Concesión de Títulos de Propiedad,*[58] delegó al Secretario del Depto. de la Vivienda la autoridad para establecer, mediante reglamentos especiales y transitorios, los procedimientos necesarios para disponer de solares o parcelas que, por disposición legal o reglamentaria, se encuentren gravados o afectados de forma tal que se impida, limite o restrinja su uso o disposición adecuada a favor de los beneficiarios de programas de interés social administrados por dicha agencia. Esta delegación persigue el propósito de hacer justicia a las familias de escasos recursos que aún no cuentan con título de propiedad sobre la parcela que ocupan.

A tales efectos, el articulo 5 (a) de la Ley Núm. 286-1999 dispone que: *"[s]olo podrá concederse título de propiedad a aquellas personas que al momento de aprobar esta Ley estén en posesión u ocupen la parcela sobre la cual solicitan título de propiedad y no sean transgresores".*[59]

En resumen, la Ley Núm. 286-1999 establece un marco legal detallado para la cesión en usufructo gratuito, con el objetivo de beneficiar a las familias de escasos recursos y garantizar el uso

---

[57] 17 LPRA sec. 762.
[58] 28 LPRA sec. 681 nota.
[59] 28 LPRA sec. 681; Véase, además; Reglamento Núm. 6162 de 8 de junio de 2000*, Reglamento Transitorio para la Implantación de las Disposiciones de la Ley 286 de 21 de Agosto de 1999*, pág. 2.

adecuado de los terrenos cedidos. Las disposiciones de la ley buscan equilibrar los intereses sociales y públicos con los derechos de los beneficiarios, imponiendo restricciones claras para evitar abusos y garantizar el cumplimiento de los fines del programa.[60]

**-III-**

De entrada, el señor Delgado Rosario apunta a cinco errores cometidos por el Dpto. de la Vivienda.

No obstante, por estar íntimamente relacionados los primeros dos (2) señalamientos de error se discutirán de forma conjunta.

En el primer error, el recurrente alega que se le privó de su derecho a disponer con la información necesaria para tomar las decisiones con respecto a las *Determinaciones de Hechos* que incluyó el Depto. de la Vivienda para fundamentar sus conclusiones legales, ya que la agencia no atendió su solicitud referente a las regrabaciones de las vistas adjudicativas. En el segundo error, señala que el Depto. de la Vivienda incidió al emitir una Resolución incompleta, ya que al duplicar el contenido de la página núm. 11 y omitir el contenido de la página núm. 12, afectó sus derechos. Por lo que solicita que el Depto. de la Vivienda notifique nuevamente la Resolución con las correcciones pertinentes, y que a partir de dicha notificación, comiencen a decursar los términos para presentar una moción de reconsideración o una solicitud de revisión judicial. No tiene razón.

En primer orden, el señor Delgado Rosario no sostuvo ante nos que la falta de atención del Depto. de la Vivienda a su petición de las regrabaciones de las vistas adjudicativa le imposibilitó de presentar adecuadamente los recursos posteriores a la Resolución emitida. Tampoco, demostró que las determinaciones de hechos carecieran de prueba, de forma tal, que hiciera necesaria la revisión

---

[60] 28 LPRA sec. 553; *Cosme Mena v. Departamento de la Vivienda*, 2024 TSPR 131, 215 DPR __ (2024); *Commonwealth v. Márquez*, 93 DPR 393 (1966).

del contenido de las regrabaciones. Por otro lado, si el recurrente entendía que la ausencia de las regrabaciones impedía una adecuada apreciación de la prueba o que había alguna determinación de hecho no sostenida por la prueba, este tenía a su disposición el mecanismo que provee la Regla 66 del Reglamento del Tribunal de Apelaciones.[61] No obstante, no lo hizo.

En segundo plano, el señor Delgado Rosario nos plantea que el Depto. de la Vivienda le notificó la Resolución incompleta. No obstante, al evaluar el expediente, este Tribunal corroboró que las determinaciones de hechos contenidas en la Resolución notificada estaban completas. Aunque la página núm. 11 aparece duplicada, su contenido no se interrumpe y continúa adecuadamente en la página núm. 12. Por tanto, tampoco se privó al recurrente de una notificación adecuada.

En cuanto a los errores tres (3) y cuatro (4), el señor Delgado Rosario señala que el Depto. de la Vivienda erró al concluir que no procedía la venta de la Parcela 59, debido a que la *"Segunda Notificación Enmendada: Archivo de Solicitud de Compra por Tasación"* era defectuosa. Sostiene que el Depto. de la Vivienda no indicó los hechos constitutivos particulares para declarar el archivo de su solicitud, y por lo tanto, la Resolución emitida no se basó en el expediente administrativo. No tiene razón.

Nótese que la segunda notificación enmendada cumplió con los requisitos dispuestos en la Sección 1 del Artículo XI del Reglamento Núm. 4953. Dicho documento expone los hechos constitutivos, las disposiciones aplicables y una explicación detallada sobre las razones por las cuales la solicitud no cumplió con los requisitos necesarios para concretar la compraventa por tasación de la Parcela 59.

---

[61] Regla 66 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, Pág. 85-86, 215 DPR __ (2025).

Todavía más, pese a que el recurrente alega que procedía la compraventa por tasación de la Parcela 59, no fundamentó ni elaboró sus argumentos. Tampoco contravino la prueba contenida en el expediente administrativo. Ciertamente, el Depto. de la Vivienda resolvió archivar su solicitud de compra por tasación, al determinar que no cumplió con los requisitos dispuesto en la Ley Núm. 132-1975, relativos a haber sido ocupante del solar y residir en la vivienda enclavada en el mismo; haber constituido en dicha vivienda su domicilio permanente; y, estar residiendo en ella al momento de la aprobación de la referida ley.

Tampoco, el señor Delgado Rosario cumplió con los requisitos de la Ley Núm. 286-1999, ya que no se encontraba en posesión de la Parcela 59 al momento de la aprobación de dicha ley.

Si bien es cierto que, el Depto. de la Vivienda autorizó la compra por tasación y la solicitud del título de propiedad de la Parcela 59 al amparo de la Ley Núm. 35-1969, no es menos cierto, que dicha autorización fue contraria a las disposiciones de la referida ley. Por lo cual, constituyó una determinación administrativa contraria a derecho. Lo que constituyó un error administrativo susceptible de corrección, el cual no le confiere al señor Delgado Rosario derecho alguno sobre la Parcela 59. Por lo tanto, el Depto. de la Vivienda no está obligado a expedir el título de propiedad sobre dicha parcela, ya que no le corresponde en derecho. En consecuencia, procedía correctamente la segunda notificación enmendada con el fin de corregir dicho error administrativo.

Por último, como quinto error el señor Delgado Rosario señala que el Depto. de la Vivienda no le permitió el descubrimiento de prueba. No tiene razón. De la propia Resolución recurrida se desprende un total de 35 Exhibits que fueron utilizados por ambas partes en la celebración de la vista. Más aun, no obra en el recurso ante nos ninguna argumentación que nos indique qué prueba

intentó descubrir, si la misma era pertinente y en cuánto perjudicó su aspiración por obtener la parcela en controversia. Es decir, el recurrente no puso en perspectiva a esta Curia para atender dicho planteamiento de error.

Por todo lo antes expuesto, resolvemos que el Depto. de la Vivienda actuó correctamente al confirmar la denegatoria de venta por tasación de la Parcela 59. La determinación se fundamentó en la legislación aplicable y los requerimientos establecidos. Dado que el señor Delgado Rosario no demostró que el Depto. de la Vivienda actuó de manera irrazonable o arbitraria en su decisión procede no intervenir en la misma.

Así pues, a la luz de la totalidad de las circunstancias del presente caso, resolvemos que la *Resolución* recurrida es correcta en derecho y se encuentra libre de arbitrariedad o irracionabilidad, por lo que no existen motivos suficientes para intervenir en el presente caso.

-**IV**-

Por los fundamentos antes expuestos, se ***confirma*** el dictamen recurrido.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones